RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0126p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 17-6082

JOHN MONTGOMERY,

*Defendant-Appellant*.

─────────────

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:13-cr-20124-1—Sheryl H. Lipman, District Judge.

Decided and Filed:  June 28, 2018

Before:  SUHRHEINRICH, GIBBONS, and KETHLEDGE, Circuit Judges.

─────────────

**COUNSEL**

─────────────

**ON BRIEF:**  Randolph W. Alden, Tyrone J. Paylor, FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  Marques T. Young, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

─────────────

**OPINION**

─────────────

JULIA SMITH GIBBONS, Circuit Judge.  John Montgomery was sentenced to 21 months' imprisonment for violating the conditions of his supervised release.  He appeals, arguing that the district court improperly classified his simple possession charge as a Grade B rather than a Grade C violation.  Because the text of the Sentencing Guidelines does not support Montgomery's argument, we affirm the sentence imposed by the district court.

I.

In 2013, Montgomery pled guilty to one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g). He was sentenced to 3 years' imprisonment followed by a 3-year period of supervised release, which commenced on December 1, 2015. On July 27, 2016, the government filed a Petition for Warrant or Summons for Offender under Supervision, alleging that Montgomery had committed two violations of his supervised release conditions: (1) he had been arrested and charged with domestic assault, and (2) he had "possessed/used a controlled substance (marijuana) that had not been prescribed for him by a physician." DE 34, Pet. for Warrant or Summons, Page ID 89. The government recommended that Montgomery's supervised release be revoked with a suggested imprisonment range of 21–27 months, based on its classification of his possession offense as a Grade B violation.

Montgomery failed to arrive in court for his initial appearance and the district court ordered a warrant for his arrest. On August 31, 2016, the government amended its Petition, adding the following offenses: (1) driving with a suspended/revoked license, (2) theft of property less than $500, and (3) violation of bail conditions. Montgomery was arrested on September 6, 2016. He admitted to driving on a suspended/revoked license and to using a controlled substance, but he challenged the government's classification of his controlled substance offense as a Grade B violation.

Montgomery argued that his simple possession conviction should have been classified as a Grade C rather than a Grade B violation because it is punishable by less than a year in prison under both state and federal law, even though 21 U.S.C. § 844 provides for an enhanced maximum sentence of two years if the defendant has a prior drug conviction. He claimed that *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), and 21 U.S.C. § 851 required the government to charge him under 21 U.S.C. § 844 and enhance his sentence according to the procedures laid out in 21 U.S.C. § 851(a)(1) in order for the district court to take into account his prior convictions when considering the grade of his violation. Because Montgomery was not charged under § 844, he argued that the court could only look to the "basic" one-year sentence for simple possession when classifying his violation grade.

The government relied on *United States v. Crace*, 207 F.3d 833 (6th Cir. 2000), to argue the probation officer properly classified Montgomery's simple possession conviction as a Grade B violation.  At the sentencing hearing, the district court was persuaded by the government's reliance on *Crace*[1] and concluded that Montgomery's violation for possessing marijuana was a Grade B violation.  It sentenced him to 21 months' imprisonment with no additional supervised release.  Montgomery timely appealed.

## II.

18 U.S.C. § 3583 governs the terms of supervised release and provides that the court may "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute" after considering certain sentencing factors laid out in 18 U.S.C. § 3553.  18 U.S.C. § 3583(e); *see also United States v. Lewis*, 498 F.3d 393, 398 (6th Cir. 2007).  In considering the sentence imposed by the district court, appellate courts must apply "a deferential abuse-of-discretion standard."  *Gall v. United States*, 552 U.S. 38, 41 (2007); *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) ("Sentences imposed following revocation of supervised release are to be reviewed under the same abuse of discretion standard [for reasonableness] that we apply to sentences imposed following conviction.").

A reviewing court first evaluates whether the sentence was "procedurally sound" and then evaluates the sentence for substantive reasonableness.  *Gall*, 522 U.S. at 51.  Montgomery only challenges the procedural reasonableness of his sentence.  A district court commits "significant procedural error . . . [by] failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [pertinent] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence."  *Id.*

---

[1]Although we affirm the district court, we do not do so on the basis of *Crace*, because we find that case inapposite.  In *Crace*, we considered whether the district court committed impermissible double counting when it considered a defendant's prior conviction in its determination that the defendant's cocaine possession offense was a Grade B rather than a Grade C violation.  207 F.3d at 835.  We concluded that it did not, reasoning that "the base offense and the criminal history category are intended to reflect different concerns." *Id.* at 838.  But Montgomery's argument has nothing to do with double counting; instead, he argues that *Carachuri-Rosendo* prevents a court from considering the recidivist enhancement in § 844 unless the defendant was charged under § 844 and the sentence was enhanced according to the procedures in § 851.  Therefore, *Crace* does not apply here.

III.

Montgomery argues that the district court committed procedural error in classifying his offense as a Grade B violation, thereby improperly calculating his Guidelines range. He claims that the Supreme Court's decision in *Carachuri-Rosendo v. Holder* means that the district court could not consider the maximum possible sentence for his simple possession conviction when assigning a grade to his violation, because his sentence was not enhanced pursuant to 21 U.S.C. § 844 in accordance with the procedures laid out in 21 U.S.C. § 851.

A.

USSG § 7B1.1 recognizes "three grades of probation and supervised release violations": Grades A, B, and C. At issue in this case is the distinction between Grade B violations and Grade C violations. A Grade B violation consists of "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year," whereas a Grade C violation consists of "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision." USSG § 7B1.1. If a defendant has committed multiple violations, then the overall grade will be "determined by the violation having the most serious grade." *Id.* Montgomery's other violations were classified as Grade C violations. Thus, whether or not Montgomery's conviction for possession of marijuana is a Grade B or Grade C violation affects his overall applicable sentencing range, since the Guidelines recommend longer sentences for Grade B violations. *See* USSG § 7B1.4 (providing suggested ranges of imprisonment for each grade of violation).

In Tennessee, simple possession of marijuana is a misdemeanor, *see* Tenn. Code Ann. § 39-17-418(c)(1), which does not carry any required prison sentence, *see* Tenn. Code Ann. § 39-11-111 ("When the performance or nonperformance of any act is made criminal by statute, and no penalty, punishment or forfeiture for the violation of that statute is imposed, the doing of the act is a misdemeanor."). Under federal law, the penalty for simple possession is "a term of imprisonment of not more than 1 year" unless the offense is committed "after a prior conviction under this subchapter or subchapter II of this chapter, or a prior conviction for any drug, narcotic,

or chemical offense chargeable under the law of any State." 21 U.S.C. § 844(a). In that case, the maximum prison sentence increases to two years. *Id.* The district court could therefore properly classify Montgomery's simple possession charge as a Grade B violation only if it could consider the recidivist sentence enhancement in § 844.

## B.

Montgomery argues that the district court could not consider the recidivist enhancement, relying on the Supreme Court's holding in *Carachuri-Rosendo*. In that case, the petitioner sought discretionary relief from removal under 8 U.S.C. § 1229b(a), which allows the Attorney General to cancel an order of removal "so long as, *inter alia*, the noncitizen 'has not been convicted of a[n] aggravated felony.'" *Carachuri-Rosendo*, 560 U.S. at 571 (alteration in original) (quoting 8 U.S.C. § 1229b(a)(3)). Under the Immigration and Nationality Act ("INA"), an "aggravated felony" includes a felony drug charge for which the maximum authorized sentence exceeds one year. *Id.* at 566–67; *see* 8 U.S.C. § 1101(a)(43). The petitioner had twice been convicted for simple possession of a controlled substance; he served a 20-day jail sentence for the first offense and a 10-day jail sentence for the second. *Carachuri-Rosendo*, 560 U.S. at 566. Because his second possession offense made him eligible for a sentencing enhancement of up to two years under both state and federal law, the Immigration Judge held that it was an "aggravated felony" even though the government had not sought an enhancement and the petitioner was only sentenced to ten days in jail for that second offense. *Id.* at 571. The Court of Appeals affirmed. *Id.* at 572–73.

The Supreme Court held that it was error to classify the petitioner's second simple possession offense as an aggravated felony. *Id.* at 582. In so holding, it emphasized the text of the INA, which prohibits discretionary cancellation of removal when the "noncitizen 'has . . . been *convicted* of a[n] aggravated felony.'" *Id.* at 576 (alteration in original) (quoting 8 U.S.C. § 1229b(a)(3)). Therefore, the Court reasoned, what matters under the statutory text is the alien's actual conviction, not "what might have or could have been charged." *Id.* The petitioner was not actually prosecuted in federal court under 21 U.S.C. § 844(a), so under the text of the INA, he had not been "convicted" of an aggravated felony. *Id.* at 578. The Court thus rejected the Court of Appeals' "hypothetical felony approach" for "consider[ing] facts not at

issue in the crime of conviction (*i.e.*, the existence of a prior conviction) to determine whether [the petitioner] *could have* been charged with a federal felony." *Id.* at 580.

In addition to the text of the INA, *Carachuri-Rosendo* relied on 21 U.S.C. § 851, which states:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1). The Court interpreted § 851 to mean that "[f]or federal law purposes, a simple possession offense is not 'punishable' as a felony unless a federal prosecutor first elects to charge a defendant as a recidivist in the criminal information." *Carachuri-Rosendo*, 560 U.S. at 578. Since the government did not follow that prescribed procedure, electing not to seek an enhanced sentence for the petitioner's second offense, that offense could not be considered an aggravated felony. *Id.* at 578–80. The Court also noted that it was very unlikely that the conduct giving rise to the petitioner's conviction—possession without a prescription of one tablet of antianxiety medication—would have been punished as a felony in federal court. *Id.* at 566, 580–81. With that additional consideration, the Court held that "[t]he Government's 'hypothetical' approach to this case is . . . misleading as well as speculative." *Id.* at 581.

Montgomery analogizes what the district court did in his case to what the Immigration Judge did in *Carachuri-Rosendo*, claiming that the court impermissibly used the "hypothetical-federal-felony approach" when it considered the recidivist enhancement in § 844 to determine the grade of his violation. He argues that "because 21 U.S.C. § 851 is the only way through which a prior drug conviction may be used to enhance a sentence in Title 21, it is clear there is simply no procedure which provides for an enhanced sentence to be possible in a supervised release violation setting." CA6 R. 12, Appellant Br., at 18. We disagree.

C.

We will address first Montgomery's argument that § 851 precludes a court from considering potential sentence enhancements in a supervised release revocation setting. Section 851 refers to a "person who stands convicted of an offense" and imposes requirements "before trial, or before entry of a plea of guilty." 21 U.S.C. § 851(a)(1). Based on the statute's plain language, it does not apply to supervised release revocations, since its requirements extend only to the period before a defendant is tried or pleads guilty. Other circuits agree. *See United States v. Wynn*, 786 F.3d 339, 342 (4th Cir. 2015) ("By its plain terms, [§ 851] applies only to the sentencing of criminal defendants who have been convicted of a crime following the 'entry of a guilty plea' or a 'trial.'"); *United States v. Bullock*, 576 F. App'x 120, 123 (3d Cir. 2014) ("Nothing in § 851 suggests, however, that the statute applies in the supervised release revocation context, where a district court need only determine that defendant's *conduct* would be 'punishable by a term of imprisonment exceeding one year' under U.S.S.G. § 7B[1].1(a)(2) [sic]."). And in *Carachuri-Rosendo*, the key issue was whether the petitioner had in fact "been 'convicted of a[n] aggravated felony,'" 560 U.S. at 578, so the Court appropriately referred to § 851, which applies only to a "person who stands convicted" of an offense from Title 21, 21 U.S.C. § 851(a)(1). In contrast, when imposing a sentence for a violation of supervised release conditions, the district court focuses on *conduct*, rather than specific convictions, under USSG § 7B1.1. Thus, we hold that § 851 does not prevent a court from considering potential sentencing enhancements in the supervised release context.

D.

Montgomery's other argument—that *Carachuri-Rosendo* prevents a court from considering hypothetical sentencing enhancements when assigning grades to supervised release violations—also fails. In *Wynn*, the Fourth Circuit rejected an identical argument for several reasons. 786 F.3d at 342. First, it concluded that § 851 "[b]y its plain terms" does not apply to supervised release revocation proceedings, since it refers only to the "entry of a plea of guilty" or a "trial." *Id.* (quoting 21 U.S.C. § 851(a)(1)). Second, it reasoned that because a supervised release revocation hearing "determine[s] the gravity of the breach of trust committed by the defendant," such a finding "necessarily requires consideration of the defendant's criminal history

unencumbered by a notice requirement applicable to an original criminal prosecution." *Id.* at 343. Finally, it considered Application Note 1 to USSG § 7B1.1, which provides:

> Under 18 U.S.C. §§ 3563(a)(1) and 3583(d), a mandatory condition of probation and supervised release is that the defendant not commit another federal, state, or local crime. A violation of this condition may be charged whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct. The grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding. Rather, the grade of the violation is to be based on the defendant's actual conduct.

USSG § 7B1.1 cmt. n.1. The Fourth Circuit reasoned that "Application Note 1 suggests that district courts consider all conduct that affects the maximum penalties for a supervised release violation," rather than confining the court to consideration only of the "basic" penalty for a given offense. *Wynn*, 786 F.3d at 343.

We find the *Wynn* decision persuasive, especially with respect to its focus on the text of USSG § 7B1.1. The holding in *Carachuri-Rosendo* rested primarily on the text of the INA, which states that the Attorney General can only cancel removal when the noncitizen has been "convicted of an aggravated felony." 8 U.S.C. § 1229b(a)(3); *see also Carachuri-Rosendo*, 560 U.S. at 578. The word "convicted" convinced the Court that it could only look to the petitioner's actual convictions and sentences, and not to any hypothetical enhancements. Not so here. The Guidelines provide that a Grade B violation is "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year." USSG § 7B1.1(a)(2). The two key words in this provision are "conduct" and "punishable"—"conduct" is broader than "conviction" or "crime," and "punishable" suggests that the court may consider hypothetical punishments. *See* USSG § 7B1.1; *see also Bullock*, 576 F. App'x at 123. Applying the same text-based approach to the Sentencing Guidelines as the Court in *Carachuri-Rosendo* applied to the INA thus leads to a different conclusion in this case.

We also agree with the Fourth Circuit that Application Note 1 supports taking the defendant's prior convictions into account, as it encourages a broad, rather than narrow, view of a defendant's criminal history. Note 1 further contradicts Montgomery's argument that he should have been charged under § 844 and enhanced under § 851, since the Note specifically

states that it does not matter whether the defendant was the subject of a "separate" prosecution. *See* USSG § 7B1.1 cmt. n.1. Note 1 also states that the grade of a defendant's violation "*does not depend* upon the conduct . . . of which the defendant is convicted in a criminal proceeding." *Id.* (emphasis added). Read naturally, this statement suggests that a defendant need not have been formally charged under § 844 and enhanced under § 851 as Montgomery claims, because whether the defendant experienced a separate formal prosecution at all for the conduct is irrelevant.

Finally, we note that the factors that a court is to consider when imposing a sentence for violation of supervised release conditions include "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. §§ 3553(a)(1), 3583(e). The statute governing supervised release revocation therefore specifically instructs the court to consider the defendant's history, which would include prior convictions.

IV.

For the foregoing reasons, we affirm the sentence imposed by the district court.